IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOHN LOUIS MODER,

               Plaintiff,

   v.                                    OPINION and ORDER

THE L.E. MEYERS COMPANY, a/k/a LE MYERS CO.,         08-cv-375-slc
a/d/b/a THE MYR GROUP, a/d/b/a THE L.E. MEYERS CO
SPECIAL, JEFFREY J. FERGUSON, JAMES M. OGDEN,
and DALE WHALEY,

               Defendants.

---

Plaintiff John Louis Moder filed this lawsuit in state court, alleging that defendants violated several state laws when they distributed false statements about his health and performance during his employment at defendant L.E. Meyers Company. Defendants removed the case and have now moved to dismiss plaintiff's complaint, contending that plaintiff's state law claims are preempted by federal law or, in the alternative, fail to state a claim upon which relief may be granted.[1] Plaintiff has filed a motion for entry of default judgment against defendant James M. Ogden, contending that he had failed to timely answer his complaint in state court before it was removed. I am denying plaintiff's motion for entry of default judgment and granting defendants' motion to dismiss except for one state law defamation claim against defendant James Ogden. Whether that claim remains in federal court depends on whether defendants take advantage of a last chance to provide adequate information about plaintiff's domicile.

---

[1] After defendants filed their most recent motion to dismiss, plaintiff filed a second amended complaint. Technically, this moots defendants' motion to dismiss; however, after plaintiff filed his second amended complaint, a new defendant (sued for the first time in that complaint) filed notice that he joins the other defendants in moving to dismiss the second amended complaint. From this notice it is clear that all defendants continue to seek dismissal of the second amended complaint on the same grounds as before.

## I. Subject Matter Jurisdiction

As a threshold matter,  I must consider defendants' basis for removing this case to ensure that this court has subject matter jurisdiction.  In their notice of removal, defendants identified two bases for exercising jurisdiction: federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332.  Is there a federal question here? Plaintiff raises only  state law claims in his complaint, but he alleges injuries related to a collective bargaining agreement between him and his union.  Because of this, defendants assert preemption on the basis of section 301 of the Labor Management Relations Act.

Generally, complaints raising only state law claims are not removable on the ground of a preemption defense.  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987).  But when the state law claims have been "completely displaced" by federal law, the complaint is "necessarily federal in character" and properly characterized "as a complaint arising under the federal law" for the purpose of exercising federal question jurisdiction under 28 U.S.C. § 1331.  *Atchley v. Heritage Cable Vision Associates*, 101 F.3d 495, 498-99 (7th Cir. 1996) (citations omitted).  I agree with defendants that Section 301 of the LMRA "has complete preemption force" such that any state law claims "directly founded on or 'substantially dependent on analysis of a collective-bargaining agreement'" are deemed federal in nature.  *Id.* (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987)).

In his complaint, plaintiff alleges that the defendants, by preparing and distributing false and injurious statements after he was terminated by defendant L.E. Meyers, committed these tortious acts:

(1) Conspired tortiously to interfere with the collective bargaining agreement;

(2) Negligently interfered with the collective bargaining agreement (including a negligently induced breach);

(3) Defamed plaintiff;

(4) Invaded plaintiff's privacy;

(5) Conspired to injure plaintiff's reputation; and

(6) Prevented plaintiff from asserting his rights under Wisconsin's unemployment compensation laws.

As explained below, plaintiff's claims for tortious interference with the agreement, negligent interference with the agreement, negligent inducement of breach, invasion of privacy and conspiracy to injure plaintiff's reputation are preempted by § 301 of the LMRA because they require interpretation of the collective bargaining act. As a result, jurisdiction is present for those claims under § 1331.

This court may exercise jurisdiction over plaintiff's third and sixth claims only if there is diversity jurisdiction present under § 1332, as defendant contends, or if it is appropriate to exercise supplemental jurisdiction pursuant to § 1367.

With respect to diversity jurisdiction, on November 20, 2008, I ordered defendants to provide this court with verification of the diversity of citizenship between them and plaintiff because the record was unclear regarding the citizenship of the parties. Defendants responded by providing information regarding the citizenship of defendants, but failed to address plaintiff's citizenship, instead simply repeating that "[a]ccording to his Second Amended Complaint, Plaintiff John Moder resides in Wisconsin." But this statement fails to demonstrate diversity

jurisdiction: as I explained in the November 20 order, defendants as the removing parties. had the burden to lay out the parties' citizenship to establish diversity, and citizenship is determined by *domicile*, not "residency." *Dakuras v. Edwards*, 312 F.3d 256, 258 (7th Cir. 2002).  This might seem like a debater's point under the circumstances, but as *Dakuras* illustrates, it is a point that must be addressed.. *See also Craig v. Ontario Corp.*, 543 F.3d 872, 876 (7th Cir. 2008); *Midwest Transit, Inc. v. Hicks*, 79 Fed. Appx. 205, 208, 2003 WL 1227 (7th Cir. 2003)(unpublished opinion).

That said, there does not appear to be any serious dispute that plaintiff is domiciled in Wisconsin, so I am going to give defendants a second chance to nail this down properly.  This is important because as becomes apparent in the discussion below, the answer to this question matters.  Given the current state of the record, I am assuming for the purposes of the instant order that the parties are not diverse.  Thus, to decide plaintiff's state law claims, I must resort to supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), under which I may exercise supplemental jurisdiction over the state law claims that "form part of the same case or controversy" as those claims preempted by the LMRA.  However, by the time I reach the merits of those claims, I will have dismissed the only "federal" claims in the case, the claims that are completely preempted by the LMRA.  Under § 1367(c), a federal court "may" decline to exercise supplemental jurisdiction over state law claims once federal claims have been dismissed, and the Court of Appeals for the Seventh Circuit has cautioned that the "may" in § 1367(c) is closer to "must"; unless the circumstances of the case are "unusual," dismissal (or in this case remand) of state law claims is proper once the federal claims are dismissed.  *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251-52 (7th Cir. 1994).  In this case, one of the "unusual"

circumstances is present for some of the remaining claims:  the correct disposition of plaintiff's unemployment compensation claims and two of his defamation claims is "so clear as a matter of state law that [they] can be determined without further trial proceedings and without entanglement with any difficult issues of state law." *Id.* at 1252 (internal quotations omitted).

One claim, however–plaintiff's defamation claim against defendant Ogden for the post-termination memo–is entangled with state law issues; therefore, absent diversity jurisdiction, it is appropriate to decline to exercise supplemental jurisdiction over this claim and remand it to state court.  Perhaps defendants will decide that they would just as soon return to state court to resolve this claim, but if not, then they will a brief opportunity to establish that this court actually has jurisdiction over it.

## II.  Plaintiff's Motion for Default Judgment Against Defendant Ogden

Plaintiff has filed an amended motion for entry of default judgment as to defendant James M. Ogden.  Dkt. 44.  I am denying that motion for the same reason that this court denied plaintiff's original motion for entry of default judgment (dkt. 35).  *See* Sept. 2, 2008 order, dkt. 42.

## III.  Defendants' Motion To Dismiss the Complaint

As for defendants' motion to dismiss, it will be granted on all of plaintiff's claims except one because the claims either require interpretation of the collective bargaining act, which means they are preempted, or the claims are barred by the applicable two-year statute of limitations. All that remains is plaintiff's defamation claim against Ogden.

5

To decide the motion to dismiss, I rely on the allegations set forth in plaintiff's second amended complaint, which is the operative pleading.  In addition, I have included relevant paragraphs from the collective bargaining agreement that governed plaintiff's employment with defendant L.E. Meyers.  The agreement was mentioned in plaintiff's second amended complaint but was not attached to it; however, defendant submitted a copy of it as an attachment to its motion to dismiss.  Dkt. 50-2.  Because the agreement is central to plaintiff's claims, I may consider it without converting the motion to dismiss into a motion for summary judgment. *Wright*, 29 F.3d at 1248 ("documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim"); *see also 188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (quoting *Wright*).  From plaintiff's second amended complaint and from the collective bargaining agreement, I draw the following facts.

PLAINTIFF'S ALLEGATIONS OF FACT

Plaintiff John Louis Moder was and is a member in the Local Union 2150 of the International Brotherhood of Electrical Workers of Waukesha, Wisconsin.  The Union has signed a letter of "assent" to become a party to a collective bargaining agreement with defendant L.E. Meyers.  The agreement governed the terms and conditions of employment with defendant L.E. Meyers.  It provided defendant L.E. Meyers Co. with general discretionary powers:

> The employer shall therefore have no restrictions, except those specifically provided for in [this agreement] in planning, directing, and controlling the operation of all his work, in deciding the number and kind of employees to properly perform the work, in hiring and laying off employees, in transferring employees from job to job within the local Union's geographical jurisdiction, in

6

> determining the need and number as well as the employer's and/or owner's rules and regulations not inconsistent with this agreement, in requiring all employees to observe all safety regulations, and in discharging employees for proper cause.

Dkt. 50-2, at § 2.01.  Regarding termination of employees, the agreement provided that:

> When a[n employee] is terminated, the employer shall complete a three (3) part termination notice, furnished by the Union, and give one copy to the terminated employee, mail one copy to the Local Union Office, and retain one copy for his files.   The termination report shall include the actual hours of work due the employee at the time of layoff.

*Id.* at § 3.15.

The Agreement establishes a process for addressing "all grievances or questions in dispute."  *Id.* at §§ 1.05-1.08, 3.25.

Plaintiff was hired by defendant L.E. Meyers on February 3, 2005 for an electric utility line replacement project in Lincoln County.   Plaintiff worked as a Foreman Journeyman Lineman under the collective bargaining agreement, heading up a crew of apprentices to assemble steel structure poles for the project.

Defendant Jeffrey Ferguson, Foreman for defendant L.E. Meyers, made false statements in three "Dent, Ding, and Incident Reports" describing incidents that occurred on March 10, April 6 and April 8, 2005.  In the March 10 report, Ferguson stated that plaintiff "[p]arked manhaul next to a crane that was to be set-up.  Extended rigger caused damage to driver side rear bin door.  Door needs replaced."  The April 6 report stated that plaintiff "Jack-knifed trailer causing damage to right-rear corner of manhaul and passenger side rear bin door."  Finally, the April 8 report stated that plaintiff "ran over the bat wings which caused them to strike the bottom of the radiator.  Radiator had to be replaced."  Although these incident reports described

7

incidents occurring in March and early April, they were not prepared until on or after April 20, 2005.  The reports were circulated to others.

On April 14, 2005, defendant L.E. Meyers terminated plaintiff's employment. Defendant Ferguson prepared a Termination Report describing falsely the circumstances of plaintiff's termination.  The report was dated April 20, 2005 and stated

> Abuse to company vehicle; Destruction of Private Property (tore down sec. service and caught fire to ground and trees); Did not fulfill Foreman expectations (Left apprentices by themselves to frame str.).

This termination report was also circulated to others.

Twelve days later, on April 26, 2005, defendant James Ogden a member of plaintiff's apprentice crew, submitted a hand-written 1½ page letter that contained untrue statements regarding plaintiff's treatment of his crew.[2]  Defendant Ogden was acting at the request of defendant Ferguson and defendant Dale Whaley, defendant L.E. Meyers's "business manager." Among other things, the letter states that plaintiff failed to provide direction or supervision to the crew, prohibited the crew from using the radio to communicate with other crews, often was absent throughout the day except at the workday's start and end, and delegated his responsibility to an apprentice.  The letter closed with: "John Moder was many times very forgetful and the word bandied around between us was the senility had creeped in."  The letter was addressed to "Dale" and included a note stating "Notes from crew Rec. 4-26-05 D.W."  The crew letter was circulated to management and decisionmakers for defendant L.E. Meyers after plaintiff had been terminated and was subsequently "filed and republished" to others.

---

[2] Four other crew members signed this memo but are not named as defendants.

Plaintiff filed a grievance with the Union concerning the termination of his employment, but he was not rehired.  According to plaintiff, the false statements prepared in the incident reports, termination report and crew letter were part of a conspiracy between defendants, "orchestrated" by defendant L.E. Meyers to cover up the real reason it fired plaintiff, which was to replace plaintiff with a younger Foreman Journeyman Lineman.  Or, at the very least, that the false statements prepared by defendants Ferguson and Ogden were "condoned" by defendants Whaley and L.E. Meyers.

On April 11, 2008, plaintiff filed his complaint in state court.  Defendants removed the action to this court.

ANALYSIS

**A. Preemption**

Defendants contend that most of plaintiff's claims are preempted by § 301(a) of the Labor Management Relations Act, which provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  It is well-established that § 301 serves not only as a basis for providing federal-court jurisdiction over collective bargaining disagreements, but also as a basis for preempting state law claims that involve collective bargaining agreements. *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 404-06 (1988) (citing *Teamsters v. Lucas Flour Co.*, 369 U.S.

9

95 (1962) and *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985)).  Although not every state law claim related to a collective bargaining agreement will be preempted by § 301, "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted."  *Lueck*, 471 U.S. at 220 (citation omitted).  This includes "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement," regardless whether the questions arise in the context of a suit for breach of contract or one alleging liability in tort.  *Id.* at 211.

Plaintiff's first argument against preemption is that § 301 does not apply to him at all because he is no longer an "employee" under the Labor Management Relations Act.  This argument must fail.  Plaintiff alleges that he continues to be a member in good standing of his union, and has continued to receive employment pursuant to the collective bargaining agreement since his employment with defendant L.E. Meyers ended.  As the Court of Appeals for the Seventh Circuit has explained, § 301 continues to govern post-termination beefs by union members so long as they continue to be subject to the agreement.  As the court stated in *Merk v. Jewel Companies, Inc.*, 848 F.2d 761 (7th Cir. 1988),

> Persons represented by a union and covered by a collective bargaining agreement–even those no longer working–must exhaust union remedies before filing suit under § 301, which may imply that the union always administers the collective bargaining agreement even for those no longer classified as statutory "employees."

*Id.* at 766.

Moreover, § 301 preemption is not focused on the current status of the "employee," but rather the need to analyze the agreement, *Lueck*, 471 U.S. at 220; therefore, the mere fact that some of the alleged acts occurred post-termination is irrelevant to the question whether state law claims arising out of the acts are preempted.

### (1)  Breach of contract claims recast as tort claims

Defendants contend that plaintiff's claims for "tortious interference with contract," "negligent interference with contract" and "negligent inducement of breach" are nothing more than thinly-veiled contract claims related to his collective-bargaining agreement.   Plaintiff suggests that these claims are for interference with a contract other than the collective bargaining agreement, but his second amended complaint states otherwise: plaintiff complains of interference and inducement of breach of the "AGREEMENT," Plt.'s Second Am. Cpt., ¶¶ 23-24, 26, which he defines as the collective bargaining agreement, *id.*, ¶ 9.

In *Kimbro v. Pepsico*, 215 F.3d 723, 725 (7th Cir. 2000), the Court of Appeals for the Seventh Circuit made it clear that § 301 prevents a plaintiff from recasting claims for breach of collective bargaining agreement into tort law claims such as claims for tortious interference of contract against the employer and other employees.  Without a doubt, *Kimbro* closes the door on these three related claims.

### (2)  Other tort claims involving the collective bargaining agreement

In a second category of claims that defendants contend are preempted, plaintiff asserts several claims that are more tenuously related to the  collective bargaining agreement itself. These include his claims that defendants invaded his privacy, conspired to injure his reputation

and defamed him.   Defendant does not assert a preemption argument for defendants'
unemployment compensation claim.   As I explain below, that claim will be dismissed as
frivolous.

First, as to plaintiff's claim for invasion of privacy, the Court of Appeals for the Seventh
Circuit has found an invasion of privacy claim such as plaintiff's to be preempted under § 301
because it would require interpretation of a "residual clause" in the collective bargaining
agreement that gave the employer discretionary rights to manage the business.   *Matter of Amoco
Petroleum Additives Co.*, 964 F.2d 706, 709-10 (7th Cir. 1992).   The same reasoning applies in
plaintiff's case: plaintiff's privacy rights could not be assessed without determining whether
defendant L.E. Meyers's actions were necessary for "planning, directing, and controlling the
operation of [plaintiff's] work under § 2.01 of the agreement.   Therefore, plaintiff's invasion of
privacy claim must be dismissed as preempted.

Next, plaintiff contends that defendants engaged in a "conspiracy to injure his
reputation" in violation of Wis. Stat. § 134.01, which prohibits "any 2 or more persons" from
conspiring together "for the purpose of willfully or maliciously injuring another in his or her
reputation, trade, business or profession."   This statutory prohibition on *any* "willful" injury to
reputation could interfere with the employer's rights under the collective bargaining agreement
to make certain statements that may injure plaintiff's reputation, for instance, when determining
whether there are proper grounds for termination under § 2.01.   Thus, as with the invasion of
privacy claim, determining liability under the state law could interfere with rights established
under the collective bargaining agreement and would require interpretation of the terms of the
agreement.   Therefore, this claim, too is preempted.

This leaves plaintiff's defamation claims.   These claims involve allegations that supervisors and co-workers made and circulated false, injurious statements about plaintiff's work performance and health.   It is hard to see how such a claim could require the interpretation of a collective bargaining agreement.   But defendants point out that defamation claims involve an element of "fault amounting at least to negligence on the part of the publisher," *Bay View Packing Co. v. Taff*, 198 Wis. 2d 653, 673, 543 N.W.2d 522, 529 (1995) (citations omitted), and argue that in some circumstances, determining the "fault" of the publisher would require interpreting the collective bargaining agreement to determine whether statements being made were "authorized" under the agreement.   Perhaps this is true in some circumstances, such as where a defendant does not know a statement to be false and publishes it in accordance with terms of the agreement.   Two of plaintiff's three defamation claims come close to this; it is at least possible that plaintiff's supervisor was acting on second-hand information when he prepared the allegedly false incident reports and termination report.   However, an inference can be drawn from the complaint that the supervisor knew that these reports were false but distributed them anyway.   As for the third defamation claim, it involves allegedly false statements by a co-worker describing his first-hand impressions of plaintiff's work performance and health.   Defendants cannot say with a straight face that either the co-worker or the supervisor were "authorized" under any provision of the collective bargaining agreement to lie about plaintiff and publish that lie.

Defendants point to a number of cases in support of its position that defamation claims involving statements made in the context of proceedings authorized by the collective bargaining agreement are preempted.   *E.g., Hasten v. Phillips Petroleum*, 640 F.2d 274, 279 (10th Cir. 1981)

(defamation claim based on statements made in process of grievance proceedings would interfere with "frank and strong" statements and are therefore preempted under LMRA); *Shane v. Greyhound Lines, Inc.*, 868 F.3d 1057, 1063 (9th Cir. 1987) (defamation claim based on statements found in discharge notification same); *Scott v. Machinists Lodge No. 190*, 827 F.2d 589, 594 (9th Cir. 1987) (defamatory statements made in context of disciplinary investigations are inextricably intertwined with the grievance machinery of the collective bargaining agreement and therefore preempted).   However, none are from the Court of Appeals for the Seventh Circuit, and none are persuasive on this point.   As the court of appeals in this circuit has stated, "[t]he crucial issue . . . is not whether a claim can be taken through the grievance process but whether the state law tort claim being asserted purports to give meaning to the terms of the labor contract."  *Keehr v. Consolidated Freightways, Inc.*, 825 F.2d 133, 137 (7th Cir. 1987).   State law claims involving only "conduct . . . that is not even arguably sanctioned by the labor contract" are not preempted by § 301.   *Id.*  (emotional distress claim not barred where it involved allegations that supervisor made insulting and vulgar statements to employee about employee's wife's sexual activities).   Preparing and distributing injurious statements about an employee that are known to be false, even if made in the context of termination proceedings, are not even arguably sanctioned by the collective bargaining agreement and do not require interpretation of its terms.   Therefore, plaintiff's defamation claims are not preempted.

The next question is what to do with the preempted claims.  *Lueck*, 471 U.S. at 220, permits a court to either dismiss the claims or convert them into § 301 claims.  In this case, dismissal is appropriate.  Converting these claims into a § 301 claim would be futile because that claim is barred by the six-month statute of limitations applicable to § 301 suits. *DelCostello v.*

14

*International Brotherhood of Teamsters*, 462 U.S. 151, 171 (1983).  At any rate, plaintiff does not appear to *want* to proceed on such a claim: he sued in state court and made little effort to defend a potential § 301 suit from dismissal in his opposition brief.  Therefore, these claims will not be converted, they will instead be dismissed as preempted.

### B.  The Merits of Plaintiff's Remaining State Law Claims

The only claims remaining are plaintiff's Wisconsin Unemployment Compensation claims and the defamation claims.  As explained below, the Wisconsin Unemployment Compensation claim is frivolous and two of the three defamation claims clearly are barred by the statute of limitations.  As for those claims, exercising supplemental jurisdiction to decide them is not problematic because their resolution is clear under state law.  However, the remaining defamation claim is trickier: defendants have raised an argument for its preemption that raises difficult questions of state law.  Rather than decide this issue, it is appropriate to decline to exercise supplemental jurisdiction on this remaining claim and remand the case back to state court.

### (1)  No claim exists under Wisconsin Unemployment Compensation laws.

In his second amended complaint, plaintiff appears to assert a claim for his loss of rights under the Wisconsin Unemployment Compensation laws.  This claim is frivolous.  As defendant points out and plaintiff does not dispute, those laws do not provide a private cause of action.  Wis. Stat. § 108.10(1).  Therefore, this claim will be dismissed.

**(2)  Two of plaintiff's defamation claims are barred by the statute of limitations**

Plaintiff's defamation claims involving the incident reports and the termination report will be dismissed as well because they are barred by the two-year statute of limitations governing such claims.  The statute provides that actions "to recover damages for libel [or] slander . . . shall be commenced within 2 years after the cause of action accrues or be barred."  Wis. Stat. § 893.57.

Wisconsin has adopted the "discovery rule" for determining accrual of claims for tort actions not governed by a legislatively created discovery rule, which include claims for defamation.  *Hansen v. A.H. Robins, Inc.*, 113 Wis.2d 550, 560, 335 N.W.2d 578, 583 (1983).  Under the discovery rule, tort claims "shall accrue on the date the injury is discovered or with reasonable diligence should be discovered."  *Id.*  Plaintiff has admitted that he became aware of the statements made in the incident reports and the termination report "shortly after" he was terminated on April 14, 2005, and therefore his claims involving those statements accrued at that time.  Dkt. 16, at 11.  However, as to the statements made in the crew letter, plaintiff did not become aware of them until December, 2006, which means that his defamation claim involving the crew letter statements did not accrue until then.

Although plaintiff acknowledges that he filed suit more than two years after discovery of the incident reports and termination report, he offers two flimsy arguments for why the statute of limitations should have tolled.  First, citing Wis. Stat. § 893.19, plaintiff contends that the statute was tolled while defendants were out of state.  However, that statute states that it does not apply to out-of-state defendants who "may be subjected to personal jurisdiction in the courts of this state," Wis. Stat. § 893.19(2), and defendants could be subjected to personal jurisdiction

16

in Wisconsin because plaintiff's claims arise from defendants' activities in Wisconsin.   Next,

plaintiff contends that the statute was tolled when the Equal Rights Division entered an "Order

of Abeyance" in a case before it involving an age discrimination claim related to the allegations

in this case.  Plaintiff cites Wis. Stat. § 893.23 in support of his position that the Equal Rights

Division order tolled his statute of limitations for his defamation claims.  But § 893.23 only tolls

the statute of limitations when a plaintiff is enjoined or statutorily prohibited from commencing

*the tolled action*.  Wis. Stat. § 893.23.  The order of abeyance issued by the Equal Rights Division

could not have stayed plaintiff's bringing a defamation action in state court because the Equal

Rights Division is not competent to hear such claims or issue orders regarding them; it "is only

competent to hear claims arising under the Fair Employment Act."  *Waid v. Merrill Area Public*

*Schools*, 91 F.3d 857, 865 (7th Cir. 1996).  Because plaintiff waited until April 2008 to file this

lawsuit, more than two years passed since accrual of plaintiff's claims involving these reports and

they are therefore barred pursuant to § 893.57.  At the same time, plaintiff's defamation claim

regarding statements made in the crew letter is not barred by the two-year statute of limitations

because it was discovered in December, 2006.

**(3)  Plaintiff's remaining claim for defamation**

A single claim has survived the gauntlet so far:  plaintiff's claim that after he was

terminated, defendant Ogden signed on to a crew letter that defamed him.  As its final attempt

to knock down this claim, defendant contends that it is barred by the Wisconsin Compensation

Act, which covers the scope of liability of an employer and provides that "the right to the

recovery of compensation under [the Act] shall be the exclusive remedy against the employer,

any other employee of the same employer and the worker's compensation insurance carrier." Wis. Stat. § 102.03(2).

However, as plaintiff points out, the Wisconsin Compensation Act applies only if at the time of the injury, "both the employer and employee are subject to the provisions of this chapter." *Id.*, § 102.03(1)(b). This analysis includes determining whether plaintiff was an "employee" at the time of the injury. Plaintiff alleges that the defamatory statements occurred *after* he was terminated as an employee, which would mean that plaintiff was not "subject to the provisions of" the Act "at the time of the injury."

Defendants contend that even claims for injuries occurring post-termination may be precluded under the Wisconsin Compensation Act, noting that the Wisconsin Court of Appeals has so held. *Wolf v. F & M Banks*, 193 Wis.2d 439, 534 N.W.2d 877 (Ct. App. 1995). In *Wolf*, the plaintiff asserted claims of defamation arising from two sources: from a letter prepared during his employment stating that he engaged in sexual harassment and from a statement made after he was terminated that he had been terminated because he engaged in sexual harassment. *Id.* at 447-48, 534 N.W.2d 877. The court of appeals held, without explanation, that the plaintiff's defamation claims were barred by the Wisconsin Compensation Act. *Id.* at 456. But in reaching this conclusion the court did not consider whether the plaintiff was an "employee" when the post-termination statements were made or whether the statute distinguished between injuries occurring before termination and after termination. *Id.* at 447-48. Accordingly, this case standing alone is not a sufficiently persuasive authority for dismissing plaintiff's post-termination defamation claim.

18

Since this is the only remaining claim, I conclude that it would be an abuse of discretion for this court to exercise supplemental jurisdiction to tackle this question. As the Court of Appeals for the Seventh Circuit pointed out in *Wright*, 29 F.3d at 1251-52, "in the usual case in which all federal claims are dismissed before trial," the balance of factors of judicial economy, convenience, fairness and comity "will point to declining to exercise jurisdiction" over remaining state law claims. For the unemployment compensation claim and the two defamation claims barred by the statute of limitations, resolution of the state law claims was permissible as their resolution was "clear" and did not involve difficult issues of state law. *Id.* I cannot say the same for this final defamation claim, which means that the proper course is to decline to exercise jurisdiction and remand the remaining claim to state court for resolution there.

Like a Möbius strip, we have circled back to where we started: notwithstanding my unwillingness to assert supplemental jurisdiction over plaintiff's orphaned state law claim, if defendants establish that this court has diversity jurisdiction over this claim, then this case will remain in federal court and we will move to the next phase in this litigation.

19

ORDER

IT IS ORDERED that:

(1)     Plaintiff's amended motion for entry of default judgment is DENIED.

(2)     Defendants The L.E. Meyers Company, Jeffrey J. Ferguson, James M. Ogden and Dale Whaley's motion to dismiss plaintiff's complaint is GRANTED with respect to these claims:

> (A) That defendants engaged in "tortious interference with contract," "negligent interference with contract," "negligent inducement of breach" and invaded his privacy and conspired to injure his reputation, because these claims are preempted by the LMRA;

> (B) That defendants interfered with his rights under the Wisconsin Unemployment Compensation laws, because this claim is frivolous; and

> (C) That defendants defamed him by making and distributing false statements found in incident reports and termination reports, because these claims are barred by the statute of limitations.

Judgment shall be entered in favor of defendants against plaintiff DISMISSING these claims against them with prejudice and costs.

(3)     Defendants' motion to dismiss plaintiff's remaining claim, that defendant Ogden defamed him by signing the crew letter submitted on "4-26-05" is DENIED;

(4)     A decision whether to remand this state law defamation claim is STAYED pending determination whether this court has diversity jurisdiction over it; and

(5)     Defendants have until December 19, 2008 to establish the existence of diversity jurisdiction over this state law defamation claim.


Entered this 4th day of December, 2008.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

20